Rev 7/06
CO Hab Corp
AO 241 amd

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

*Mark Stubblefield*
NAME (Under which you were convicted)

*# 01213-000*
PRISON NUMBER

PLACE OF CONFINEMENT/ADDRESS
*F.C.I. Williamsburg*
*P.O. Box 340*
*Salters, S.C. 29590*

*Mark Stubblefield*                               )
(Full Name)              Petitioner              )
                                                  )
                                                  )
        v.                                        )
                                                  )
                                                  )
*John R. Owen, Warden, et al.*                    )
(Name of Warden, Superintendent, Jailor, or       )
authorized person having custody of petitioner)   )
                        Respondent                )

**FILED**
Page 1

AUG - 7 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

*Let this be filed as a motion to*
*Vacate + set aside*
*Conviction + sentence*
*under 28 U.S.C. § 2255.*

*Royce C. Lamberth*
*U.S.D.J.  8/7/12*

Civil Action No.: _____
(To be filled in by Clerk)

**PETITION FOR WRIT OF HABEAS CORPUS**
**BY A PERSON IN CUSTODY IN THE DISTRICT OF COLUMBIA**

**INSTRUCTIONS - PLEASE READ CAREFULLY**

1.   This petition must be legibly handwritten or typed, and signed by the petitioner.  Any false statement of material fact may serve as the basis for prosecution and conviction for perjury.  All questions must be answered concisely in the proper space on the form.

2.   Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief.  No citation of authorities need be furnished.  If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

3.   Upon receipt, your petition will be filed if it is in proper order and is accompanied by a $5.00 filing fee.  Your check or money order should be made payable to: Clerk, U.S. District Court.



RECEIVED
Mail Room

JUL 3 0 2012

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

4.   If you cannot afford to pay the filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the affidavit on the last page, setting forth information establishing your inability to pay the costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

5.   Only sentences imposed by one court may be challenged in a single petition. If you seek to challenge sentences entered by different courts, you must file separate petitions as to each court.

6.   When you have completed the form, send the original and one copy to:
     Clerk, United States District Court for the District of Columbia
     Room 1225
     333 Constitution Avenue, NW
     Washington, DC 20001

7.   <u>Petitions which do not conform to these instructions may be returned with a notation as to the deficiency.</u>

## PETITION

1.   (a)   Name and location of court which imposed the sentence (or detention) of conviction you are challenging: United States District Court For the District of Columbia, 333 Constitution Avenue, N.W. Washington, D.C. 20001

2.   (a)   Date of the sentence (or detention): Detention date: 5/12/2008

3.   Length of sentence: 15 Years

4.   Nature of offense involved (all counts): 6 Counts of Bank Robbery; and 1 count of attempted Bank Robbery as defined under Title 18, Section 2113 (a), United States Code.

5.   (a)   What was your plea? (Check one):
     ☑   Not guilty
     ☐   Guilty
     ☐   Nolo Contendere (no contest)
     ☐   Insanity

(b)    If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____ _N_/_A_ _____

_____

_____

_____

_____

_____

6.    Have you previously filed any petitions, applications, or motions with respect to this sentence in any court?

□   Yes
☑   No

7.    If your answer to Question 10 was "Yes," give the following information:

(a)   (1)   Name of Court: _____ _N_/_A_ _____

       (2)   Nature of the proceedings: _____

_____

_____

_____

       (3)   Grounds raised: _____

_____

_____

_____

       (4)   Did you receive an evidentiary hearing on your petition, application or motion?

          □   Yes
          □   No   _N_/_A_

       (5)   Result: _____

       (6)   Date of result: _____

(b)   As to any second petition, application, or motion, give the same information:

       (1)   Name of Court: _____ _N_/_A_ _____

       (2)   Nature of the proceedings: _____

_____

_____

_____

       (3)   Grounds raised: _____

_____

_____

_____

       (4)   Did you receive an evidentiary hearing on your petition, application or motion?

          □   Yes
          □   No   _N_/_A_

       (5)   Result: _____

    (6)    Date of result: _____

(c)    As to any third petition, application, or motion, give the same information:
    (1)    Name of Court: _____*N/A*_____
    (2)    Nature of the proceedings: _____
    _____
    _____
    _____
    (3)    Grounds raised: _____
    _____
    _____
    _____
    _____
    (4)    Did you receive an evidentiary hearing on your petition, application or motion?
            ☐    Yes   *N/A*
            ☐    No
    (5)    Result: _____
    (6)    Date of result: _____

(d)    Did you appeal to the highest court having jurisdiction for the result of action taken in any
    petition, application or motion?   *N/A*
    (1)    First petition, etc."
            ☐    Yes
            ☐    No
    (2)    Second petition, etc.:
            ☐    Yes
            ☐    No
    (3)    Third petition, etc.:
            ☐    Yes
            ☐    No

(e)    If you did not appeal from the adverse action on any petition, application, or motion,
    explain briefly why you did not: _____*N/A*_____
    _____
    _____
    _____
    _____
    _____

8.    State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize
<u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional
grounds and <u>facts</u> supporting same.

A.   GROUND ONE:

   (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: *Ineffective Assistance of Counsel violated Defendant's right under the Sixth, Fourth, and Fifth Amendments of the United States Constitution where defense counsel Heather H. Shaner failed to file motion to quash indictment on the basis of lack of probable cause to stop, seize, and search the defendant. For supporting facts, see: Memorandum in support of section 2255 motion, pages 2 through 9, accompanied here with. See also, Ground One, pages 9 through*

B.   GROUND TWO:

   (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: *Ineffective Assistance of Counsel violated Defendant's right under the Sixth, Fourth, and Fifth Amendments of the United States Constitution where defense counsel Heather H. Shaner failed to file motion to suppress the Government's use of a booking photograph as the "fruit" of an illegal arrest. For supporting facts, see: Memorandum in support of Section 2255 motion, page 6, paragraphs 8 through 12, and page 7, paragraph 13 through 14.*

C.   GROUND THREE:

   (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: *Ineffective Assistance of Counsel violated Defendant's right under the Sixth, Fourth and Fifth Amendments of the United States Constitution where defense counsel Heather H. Shaner failed to raise in the District Court that Defendant's arrest on the minor offense was a pretext to search for evidence of bank robbery that he was suspected of committing. For supporting facts see: Memorandum in support of Section 2255 motion, Ground Three, pages 14 through 18.*

D.    GROUND FOUR:

    (a)    Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: _____

_____
_____
_____
_____
_____
_____
_____
_____

9.    If any of the grounds listed in 8A, B, C, or D were not previously presented in any other court, District of Columbia or Federal, state briefly what grounds were not so presented, and give your reasons for not presenting them: *GROUND ONE, GROUND TWO, AND GROUND THREE WAS NOT RAISED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA BECAUSE DEFENSE COUNSEL HEATHER H. SHANEE WAS NOT REQUIRED TO RAISE HER OWN INEFFECTIVENESS AND THE RECORD WAS INSUFFICIENT TO RAISE SAID CLAIMS PRO SE.*

_____
_____

10.   Do you have any petition or appeal pending in any other court, either, District of Columbia or Federal, as to the sentence (or detention) under attack?

    ☐  Yes
    ☑  No

    (a)    If so, give the name and location of the court and case number, if known: _____

_____ *N/A* _____
_____

11.   Do you have any future sentence to serve after you complete the sentence (or detention) under attack?

    ☐  Yes
    ☑  No

    (a)    If so, give name and location of court which imposed sentence to be served in the future:

_____ *N/A* _____
_____

Page 7

(b)     And give date and length of sentence to be served in future: _____ N/A _____

_____

(c)     Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
         ☐     Yes
         ☐     No     N/A


        Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Mark L Stubblefield_
Petitioner's Signature

_6/15/2012_
Date

AO 240 (Rev. 10/03)

# UNITED STATES DISTRICT COURT

**District of**   COLUMBIA

Plaintiff

V.

Defendant

**APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT**

CASE NUMBER:

I, _Mark STUBBLEFIELD_ _____ declare that I am the (check appropriate box)

☒ petitioner/plaintiff/movant        ☐ other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1.  Are you currently incarcerated?          ☒ Yes          ☐ No          (If "No," go to Part 2)

    If "Yes," state the place of your incarceration _FCI Williamsburg_ _____

    Are you employed at the institution? _Yes_   Do you receive any payment from the institution? _Yes_

    Attach a ledger sheet from the institution(s) of your incarceration showing at least the past **six months'** transactions.

2.  Are you currently employed?          ☐ Yes          ☐ No

    a.  If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer. (List both gross and net salary.)

    b.  If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.

3.  In the past 12 twelve months have you received any money from any of the following sources?

    | | | | |
    |---|---|---|---|
    | a. | Business, profession or other self-employment | ☐ Yes | ☒ No |
    | b. | Rent payments, interest or dividends | ☐ Yes | ☒ No |
    | c. | Pensions, annuities or life insurance payments | ☐ Yes | ☒ No |
    | d. | Disability or workers compensation payments | ☐ Yes | ☒ No |
    | e. | Gifts or inheritances | ☒ Yes | ☐ No |
    | f. | Any other sources | ☐ Yes | ☒ No |

    If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

AO 240 Reverse (Rev. 10/03)

4.  Do you have **any** cash or checking or savings accounts?       ☐ Yes        ☒ No

    If "Yes," state the total amount.  _____

5.  Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other
    thing of value?        ☐ Yes        ☒ No

    If "Yes," describe the property and state its value.

6.  List the persons who are dependent on you for support, state your relationship to each person and indicate
    how much you contribute to their support.  (If children are dependents, please refer to them by their initials)

I declare under penalty of perjury that the above information is true and correct.

_7 / 24 / 2012_____        _Mark Stittlefield_____
/Date                        Signature of Applicant

**NOTICE TO PRISONER:** A Prisoner seeking to proceed without prepayment of fees shall submit an affidavit
stating all assets.  In addition, a prisoner must attach a statement certified by the appropriate institutional officer
showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have
multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each
account.

ViewAllTransCombined

## All Transactions



| Inmate Reg #: | 01213000 | Current Institution | Williamsburg FCI |
| Inmate Name: | STUBBLEFIELD MARK | Housing Unit | WIL-e-A |
| Report Date: | 07-25-2012 | Living Quarters | C03-121L |
| Report Time: | 2:18:16 PM | | |

| Date/Time | Transaction Type | Amount | Ref# | Payment# | Balance |
|---|---|---|---|---|---|
| 7/22/2012 7:42:31 PM | Phone Withdrawal | ($4.00) | TFN0722 | | $2.82 |
| 7/22/2012 7:44:01 AM | Phone Withdrawal | ($2.00) | TFN0722 | | $6.82 |
| 7/18/2012 7:31:34 AM | Sales - Fingerprint | ($6.25) | 10 | | $8.82 |
| 7/14/2012 8:40:45 PM | Phone Withdrawal | ($3.00) | TFN0714 | | $15.07 |
| 7/12/2012 11:52:51 AM | Phone Withdrawal | ($2.00) | TFN0712 | | $18.07 |
| 7/11/2012 10:34:39 AM | Phone Withdrawal | ($3.00) | TFN0711 | | $20.07 |
| 7/11/2012 10:03:26 AM | TRUL Withdrawal | ($2.00) | TL0711 | | $23.07 |
| 7/11/2012 7:49:02 AM | Sales - Fingerprint | ($97.80) | 13 | | $25.07 |
| 7/10/2012 3:02:53 PM | Phone Withdrawal | ($1.00) | TFN0710 | | $122.87 |
| 7/10/2012 5:33:17 AM | Lockbox - CD | $50.00 | 70112401 | | $123.87 |
| 7/9/2012 4:34:28 PM | Phone Withdrawal | ($2.00) | TFN0709 | | $73.87 |
| 7/9/2012 2:09:11 PM | Payroll - IPP | $25.50 | LIPP0612 | | $75.87 |
| 7/7/2012 6:36:18 AM | Phone Withdrawal | ($10.00) | TFN0707 | | $50.37 |
| 7/7/2012 5:27:06 AM | Lockbox - CD | $60.00 | 70112301 | | $60.37 |
| 6/21/2012 2:46:04 PM | Phone Withdrawal | ($1.00) | TFN0621 | | $0.37 |
| 6/19/2012 7:13:12 AM | Sales - Fingerprint | ($17.55) | 1 | | $1.37 |
| 6/16/2012 11:23:23 AM | Phone Withdrawal | ($1.00) | TFN0616 | | $18.92 |
| 6/16/2012 7:42:30 AM | Phone Withdrawal | ($1.00) | TFN0616 | | $19.92 |
| 6/15/2012 12:12:07 PM | Phone Withdrawal | ($1.00) | TFN0615 | | $20.92 |
| 6/15/2012 5:19:13 AM | Lockbox - CD | $20.00 | 70110801 | | $21.92 |
| 6/13/2012 6:04:25 AM | FRP Treasury Pymt | ($25.00) | LFRP0612 | 1713 | $1.92 |
| 6/13/2012 6:04:25 AM | FRP Excess With | $25.00 | LFRP0612 | | $26.92 |
| 6/11/2012 7:57:33 PM | Phone Withdrawal | ($1.00) | TFN0611 | | $1.92 |
| 6/11/2012 5:21:09 PM | Phone Withdrawal | ($3.00) | TFN0611 | | $2.92 |
| 6/11/2012 8:19:13 AM | Sales - Fingerprint | ($27.42) | 17 | | $5.92 |
| 6/10/2012 12:14:50 PM | Phone Withdrawal | ($2.00) | TFN0610 | | $33.34 |
| 6/10/2012 10:36:57 AM | Phone Withdrawal | ($5.00) | TFN0610 | | $35.34 |
| 6/10/2012 5:17:04 AM | Lockbox - CD | $40.00 | 70110402 | | $40.34 |
| 6/8/2012 8:39:47 PM | Phone Withdrawal | ($1.00) | TFN0608 | | $0.34 |
| 6/8/2012 12:14:26 PM | Phone Withdrawal | ($1.00) | TFN0608 | | $1.34 |
| 6/8/2012 11:52:23 AM | FRP Quarterly Pymt | ($25.00) | LFRP0612 | | $2.34 |
| 6/8/2012 11:51:54 AM | Payroll - IPP | $27.20 | LIPP0512 | | $27.34 |
| 6/2/2012 7:28:42 PM | Phone Withdrawal | ($1.00) | TFN0602 | | $0.14 |
| 6/2/2012 8:36:57 AM | Phone Withdrawal | ($2.00) | TFN0602 | | $1.14 |
| 6/1/2012 7:21:34 PM | Phone Withdrawal | ($1.00) | TFN0601 | | $3.14 |
| 6/1/2012 1:31:19 PM | TRUL Withdrawal | ($2.00) | TL0601 | | $4.14 |
| 5/30/2012 5:17:20 PM | Phone Withdrawal | ($1.00) | TFN0530 | | $6.14 |
| 5/30/2012 12:06:14 PM | Phone Withdrawal | ($2.00) | TFN0530 | | $7.14 |
| 5/30/2012 7:24:15 AM | Sales - Fingerprint | ($17.45) | 7 | | $8.14 |
| 5/30/2012 5:30:23 AM | Lockbox - CD | $25.00 | 70109601 | | $25.59 |
| 5/26/2012 8:35:52 PM | Phone Withdrawal | ($1.00) | TFN0526 | | $0.59 |
| 5/23/2012 2:59:36 PM | Phone Withdrawal | ($1.00) | TFN0523 | | $1.59 |
| 5/21/2012 7:59:16 AM | Sales - Fingerprint | ($48.05) | 26 | | $2.59 |
| 5/19/2012 10:41:17 AM | Phone Withdrawal | ($2.00) | TFN0519 | | $50.64 |
| 5/19/2012 5:18:53 AM | Lockbox - CD | $40.00 | 70110301 | | $52.64 |
| 5/14/2012 11:56:35 AM | Phone Withdrawal | ($1.00) | TFN0514 | | $12.64 |
| 5/14/2012 8:22:33 AM | Sales - Fingerprint | ($9.00) | 27 | | $13.64 |
| 5/14/2012 8:18:50 AM | Sales - Fingerprint | ($48.75) | 26 | | $22.64 |
| 5/11/2012 5:14:45 PM | Phone Withdrawal | ($2.00) | TFN0511 | | $71.39 |
| 5/11/2012 12:30:58 PM | Phone Withdrawal | ($3.00) | TFN0511 | | $73.39 |

1 2 3 4

ViewAllTransCombined

## All Transactions

 **PRINT**

| | | | |
|---|---|---|---|
| Inmate Reg #: | 01213000 | Current Institution: | Williamsburg FCI |
| Inmate Name: | SHUBBLEFIELD MARK | Housing Unit | WH-C-A |
| Report Date: | 07-25-2012 | Living Quarters | C01-128 |
| Report Time: | 2:19:18 PM | | |

| Date/Time | Transaction Type | Amount | Ref# | Payment# | Balance |
|---|---|---|---|---|---|
| 5/11/2012 5:23:49 AM | Lockbox - CD | $40.00 | 70108401 | | $76.39 |
| 5/10/2012 1:13:04 PM | Payroll - IPP | $23.80 | LIPP0412 | | $36.39 |
| 5/9/2012 9:21:13 AM | Phone Withdrawal | ($3.00) | TFN0509 | | $12.59 |
| 5/1/2012 5:23:23 AM | Lockbox - CD | $9.65 | 70107601 | | $15.59 |
| 4/24/2012 5:22:10 AM | Lockbox - CD | $5.10 | 70107101 | | $5.94 |
| 4/19/2012 8:43:51 AM | Sales - No FP (Non-FP Session) | ($5.80) | 44 | | $0.84 |
| 4/12/2012 3:14:28 PM | Inmate Co-pay | ($2.00) | LICP0412 | | $6.64 |
| 4/10/2012 7:17:28 AM | Sales - Fingerprint | ($46.70) | 5 | | $8.64 |
| 4/9/2012 7:42:53 PM | Phone Withdrawal | ($2.00) | TFN0409 | | $55.34 |
| 4/9/2012 5:22:28 AM | Lockbox - CD | $25.00 | 70106003 | | $57.34 |
| 4/7/2012 1:11:05 PM | Phone Withdrawal | ($3.00) | TFN0407 | | $32.34 |
| 4/6/2012 7:30:06 PM | Phone Withdrawal | ($2.00) | TFN0406 | | $35.34 |
| 4/6/2012 12:52:18 PM | Payroll - IPP | $37.20 | LIPP0312 | | $37.34 |
| 4/5/2012 6:24:09 PM | TRUL Withdrawal | ($2.00) | TL0405 | | $0.14 |
| 4/5/2012 11:27:49 AM | Books | ($22.50) | 2040 | 1226 | $2.14 |
| 4/5/2012 11:27:49 AM | BP 199 Request - Released | $22.50 | 2040 | | |
| 4/3/2012 6:00:58 PM | Phone Withdrawal | ($1.00) | TFN0403 | | $24.64 |
| 4/3/2012 2:10:34 PM | BP 199 Request | ($22.50) | 2040 | | |
| 4/3/2012 2:09:15 PM | BP 199 Request - Released | $22.50 | 2034 | | |
| 4/3/2012 1:55:25 PM | Phone Withdrawal | ($3.00) | TFN0403 | | $25.64 |
| 4/3/2012 11:28:39 AM | Sales - Fingerprint | ($72.50) | 48 | | $28.64 |
| 4/3/2012 9:13:46 AM | BP 199 Request | ($22.50) | 2034 | | |
| 4/3/2012 5:22:57 AM | Lockbox - CD | $100.00 | 70105601 | | $101.14 |
| 3/28/2012 5:30:45 PM | Phone Withdrawal | ($1.00) | TFN0328 | | $1.14 |
| 3/27/2012 11:11:44 AM | Sales - Fingerprint | ($4.00) | 76 | | $2.14 |
| 3/27/2012 9:18:50 AM | Sales - Fingerprint | ($34.00) | 46 | | $6.14 |
| 3/24/2012 7:51:48 PM | Phone Withdrawal | ($1.00) | TFN0324 | | $40.14 |
| 3/22/2012 2:10:55 PM | Phone Withdrawal | ($2.00) | TFN0322 | | $41.14 |
| 3/21/2012 10:45:07 AM | TRUL Withdrawal | ($2.00) | TL0321 | | $43.14 |
| 3/19/2012 3:28:50 PM | Phone Withdrawal | ($3.00) | TFN0319 | | $45.14 |
| 3/19/2012 12:29:45 PM | TRUL Withdrawal | ($2.00) | TL0319 | | $48.14 |
| 3/17/2012 2:26:37 PM | Phone Withdrawal | ($2.00) | TFN0317 | | $50.14 |
| 3/16/2012 5:05:10 PM | Phone Withdrawal | ($3.00) | TFN0316 | | $52.14 |
| 3/13/2012 12:03:34 PM | Phone Withdrawal | ($4.00) | TFN0313 | | $55.14 |
| 3/13/2012 8:23:31 AM | Sales - Fingerprint | ($10.95) | 26 | | $59.14 |
| 3/13/2012 7:50:58 AM | Sales - Fingerprint | ($80.85) | 17 | | $70.09 |
| 3/13/2012 6:26:35 AM | FRP Treasury Pymt | ($25.00) | LFRP0312 | 1047 | $150.94 |
| 3/13/2012 6:26:35 AM | FRP Excess With | $25.00 | LFRP0312 | | $175.94 |
| 3/13/2012 5:31:40 AM | Lockbox - CD | $150.00 | 70104101 | | $150.94 |
| 3/12/2012 2:52:00 PM | TRUL Withdrawal | ($2.00) | TL0312 | | $0.94 |
| 3/10/2012 10:45:28 AM | Phone Withdrawal | ($7.00) | TFN0310 | | $2.94 |
| 3/9/2012 7:01:39 PM | Phone Withdrawal | ($3.00) | TFN0309 | | $9.94 |
| 3/9/2012 3:29:23 PM | FRP Quarterly Pymt | ($25.00) | LFRP0312 | | $12.94 |
| 3/9/2012 2:58:53 PM | Payroll - IPP | $25.50 | LIPP0212 | | $37.94 |
| 3/9/2012 2:58:26 PM | Payroll - IPP | $12.00 | LIPP0212 | | $12.44 |
| 3/9/2012 9:49:01 AM | Sales - Fingerprint | ($22.70) | 53 | | $0.44 |
| 3/8/2012 4:34:06 PM | Phone Withdrawal | ($2.00) | TFN0308 | | $23.14 |
| 2/25/2012 7:53:04 PM | Phone Withdrawal | ($2.00) | TFN0225 | | $25.14 |
| 2/25/2012 7:23:29 AM | Phone Withdrawal | ($1.00) | TFN0225 | | $27.14 |
| 2/24/2012 11:05:01 AM | Phone Withdrawal | ($1.00) | TFN0224 | | $28.14 |

1 2 3 4

# All Transactions



| Inmate Reg #. | 04213000 | Current Institution: | Williamsburg FCI |
| Inmate Name: | STUBBLEFIELD, MARK | Housing Unit: | WIL-C-A |
| Report Date: | 07-25-2012 | Living Quarters: | C01-121L |
| Report Time: | 2-39-35 PM | | |

| Date/Time | Transaction Type | Amount | Ref# | Payment# | Balance |
|---|---|---|---|---|---|
| 2/23/2012 10.33.43 AM | Phone Withdrawal | ($2.00) | TFN0223 | | $29.14 |
| 2/17/2012 10.50.41 AM | Phone Withdrawal | ($2.00) | TFN0217 | | $31.14 |
| 2/13/2012 8·14·01 AM | Sales - Fingerprint | ($57.15) | 26 | | $33.14 |
| 2/11/2012 4:56:32 PM | Phone Withdrawal | ($5.00) | TFN0211 | | $90.29 |
| 2/11/2012 12.34:58 PM | Phone Withdrawal | ($5.00) | TFN0211 | | $95.29 |
| 2/11/2012 5·23.52 AM | Lockbox - CD | $75.00 | 70102101 | | $100.29 |
| 2/3/2012 4:46 21 PM | Phone Withdrawal | ($1.00) | TFN0203 | | $25.29 |
| 2/2/2012 8 06·17 PM | Phone Withdrawal | ($1.00) | TFN0202 | | $26.29 |
| 1/29/2012 9:12·41 PM | Phone Withdrawal | ($2.00) | TFN0129 | | $27.29 |
| 1/25/2012 9:21.54 PM | Phone Withdrawal | ($1.00) | TFN0125 | | $29.29 |
| 1/23/2012 7:23·10 AM | Sales - Fingerprint | ($9.95) | 2 | | $30.29 |
| 1/21/2012 2:40 01 PM | Phone Withdrawal | ($2.00) | TFN0121 | | $40.24 |
| 1/17/2012 8:21:45 AM | Sales - Fingerprint | ($23.70) | 35 | | $42.24 |
| 1/14/2012 2:32:57 PM | Phone Withdrawal | ($2.00) | TFN0114 | | $65.94 |
| 1/14/2012 12·28 02 PM | Phone Withdrawal | ($4.00) | TFN0114 | | $67.94 |
| 1/14/2012 5:20:42 AM | Lockbox - CD | $70.00 | 70100201 | | $71.94 |
| 1/9/2012 7:15:08 AM | Sales - Fingerprint | ($21.03) | 11 | | $1.94 |
| 1/8/2012 1.06.44 PM | Phone Withdrawal | ($2.00) | TFN0108 | | $22.97 |
| 1/6/2012 1.35 25 PM | FRP Single Pymt | $0.00 | LFRP0112 | | $24.97 |
| 1/5/2012 8.04 35 AM | Phone Withdrawal | ($2 00) | TFN0105 | | $24.97 |
| 1/3/2012 9:29:13 PM | Phone Withdrawal | ($1 00) | TFN0103 | | $26.97 |
| 12/30/2011 1:32:01 PM | Phone Withdrawal | ($2.00) | TFN1230 | | $27.97 |
| 12/30/2011 8·04:48 AM | Sales - Fingerprint | ($22.30) | 34 | | $29.97 |
| 12/25/2011 6 20:00 PM | Phone Withdrawal | ($3.00) | TFN1225 | | $52 27 |
| 12/25/2011 11·24:25 AM | Phone Withdrawal | ($2.00) | TFN1225 | | $55.27 |
| 12/24/2011 10.37·22 AM | Phone Withdrawal | ($3 00) | TFN1224 | | $57 27 |
| 12/24/2011 8 45:07 AM | Phone Withdrawal | ($5.00) | TFN1224 | | $60.27 |
| 12/24/2011 5.34:16 AM | Lockbox - CD | $60.00 | 70198801 | | $65.27 |
| 12/19/2011 8.01:15 AM | Sales - Fingerprint | ($8.88) | 23 | | $5.27 |
| 12/18/2011 3:37.58 PM | Phone Withdrawal | ($1.00) | TFN1218 | | $14.15 |
| 12/18/2011 7·22:57 AM | Phone Withdrawal | ($1.00) | TFN1218 | | $15.15 |
| 12/11/2011 6·04·07 PM | Phone Withdrawal | ($4.00) | TFN1211 | | $16.15 |
| 12/11/2011 9 39:32 AM | Phone Withdrawal | ($5.00) | TFN1211 | | $20 15 |
| 12/11/2011 5:20:09 AM | Lockbox - CD | $25.00 | 70197802 | | $25.15 |
| 12/9/2011 6:10 37 PM | Phone Withdrawal | ($3.00) | TFN1209 | | $0 15 |
| 12/9/2011 3.31.07 PM | Phone Withdrawal | ($3.00) | TFN1209 | | $3 15 |
| 12/9/2011 2:09.49 PM | Payroll - IPP | $5.25 | LIPP1111 | | $6.15 |
| 11/24/2011 3·13·54 PM | Phone Withdrawal | ($2.00) | TFN1124 | | $0.90 |
| 11/21/2011 4:45:57 PM | Phone Withdrawal | ($1.00) | TFN1121 | | $2 90 |
| 11/21/2011 7 58:46 AM | Phone Withdrawal | ($2.00) | TFN1121 | | $3 90 |
| 11/20/2011 6.11:16 PM | Phone Withdrawal | ($1.00) | TFN1120 | | $5.90 |
| 11/20/2011 1·33:32 PM | Phone Withdrawal | ($1.00) | TFN1120 | | $6.90 |
| 11/19/2011 6·04:59 PM | Phone Withdrawal | ($3 00) | TFN1119 | | $7.90 |
| 11/16/2011 6:13:14 PM | Phone Withdrawal | ($2.00) | TFN1116 | | $10.90 |
| 11/16/2011 2.28:01 PM | TRUL Withdrawal | ($2.00) | TL1116 | | $12.90 |
| 11/12/2011 1:37:15 PM | Phone Withdrawal | ($1.00) | TFN1112 | | $14.90 |
| 11/11/2011 2:37:30 PM | Phone Withdrawal | ($2 00) | TFN1111 | | $15.90 |
| 11/10/2011 2:57:52 PM | Payroll - IPP | $17.28 | LIPP1011 | | $17.90 |
| 11/9/2011 10.54:44 AM | Phone Withdrawal | ($9.00) | TFN1109 | | $0 62 |
| 11/8/2011 1:08:36 PM | Phone Withdrawal | ($1.00) | TFN1108 | | $9.62 |

1 2 3 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

          PLAINTIFF,

V.                           CASE No. 08-171 (H.H.K)

MARK STUBBLEFIELD,

            DEFENDANT.

MEMORANDUM IN SUPPORT OF SECTION 2255 MOTION

   Comes Now the defendant, Mark Stubblefield, Pro Se, pursuant to 28 U.S.C., Section 2255, and files this Memorandum in support of his Motion to vacate and set aside his conviction and sentence for violation of 18 U.S.C., Section 2113(a), six counts of bank robbery and one count of attempted bank robbery.

## BACKGROUND

1.  During the early months of 2008, several banks were robbed in the Northwest quadrant of the District of Columbia. Based on reported information maintained by the Federal Bureau of Investigation (FBI), Washington D.C. Field Case File No. 91A-WF-238062, law enforcement developed the assertion that all the reported bank robberies were committed by the same person of African-American descent of slight stature and whose facial appearance is unusual as determined by eyewitness recollections, FBI investigations, and the written notes from the interview of Dr. Steven R. Patterino, Executive Director of Cancer Center, George Washington University Cancer Institute, Washington, D.C. See: ATTACHMENT-A, EXHIBIT-1.

2.  On April 10, 2008, Percy White, a United States Secret Service Composite Sketch Artist met with victim teller employed with the Washington First Bank and a witness to two of the three robberies that occurred at the Washington First Bank during the early months of 2008. With the help of the eyewitness, Agent White completed the composite sketch of the unknown individual

who reportedly robbed the Washington First
Bank on January 29, 2008, March 26, 2008, and
April 7, 2008. The composite sketch of the
suspected bank robber was circulated as a Wanted
Poster throughout Washington, D.C., by the
Metropolitan Police Department in conjuction with
the F.B.I. SEE: ATTACHMENT-A, EXHIBIT-2.

3.   On May 13, 2008, Louis DeJesus, Special
Agent with the Federal Bureau of Investigation (FBI),
appeared before U.S. Magistrate Judge Alan Kay,
and being sworn under oath, declared under the
Penalty of Perjury that the foregoing information
is true and correct to the best of his knowledge
and belief, and thereby asserting that:

a)   While canvassing the Washington, D.C.
     area with a flyer containing the sketch,
     an FBI agent encountered a citizen who
     identified the subject of the sketch
     as someone he/she knew,

b)   The citizen further indicated that the
     suspect frequented the area surrounding
     7th Street, NW, and Florida Avenue, NW.

3

c) On May 12, 2008, the citizen contacted the FBI Agent and stated the suspect was located at 7th Street, Northwest, and Rhode Island, Northwest. Metropolitan Police Officers responded to the scene in a marked police car. As the police approached the suspect fled on foot. A chase ensured, and the suspect was apprehended at the rear of 626 S. Street, Northwest. The suspect was subsequently arrested for possession of drug paraphernalia. The suspect provided the name Michael Smith.

SEE: ATTACHMENT-A, EXHIBIT-3, PAGE 3, PARA., 13 THROUGH PAGE 4, PARA., 13.

4. On May 12, 2008, and for no apparent reason, Stubblefield was detained outside of 626 S. Street, N.W. by D.C. Metropolitan Police Officers who pointed firearms at Stubblefield who then was ordered to lie face down to the ground where he was search and handcuffed. Stubblefield was taken into custody for possession of drug paraphernalia.

5. The D.C. Metropolitan Police Officers who were directly involved in either the actual stop and/or search of Stubblefield were Officers Shedrick, M. #3539, 3rd District, Wallace, P. #5554, 3rd District, Ashby, E. #2756, 3rd District, Jefferson, R. #2614, 3rd District, Jolly, D. #2984, 3rd District, Bialeski, M. #2531, 3rd District, Detective John Reese of the Capital Area Regional Fugitive Task Force, and John Reese partner Mike Sanborn, a Special Agent. See: ATTACHMENT-A, EXHIBIT-4.

6. At the December 9, 2008 (Suppression Hearing), Detective Reese testified that only one uniform officer was involved in the stop of Stubblefield on May 12, 2008. See: SUPPRESSION HEARING TRANSCRIPT, dated December 9, 2008, Page 22.

7. Detective Reese took Stubblefield into custody and transported him to the Metropolitan Police Department Headquarters where he was immediately confined to an interrogation room and handcuffed to a chair incommunicado while he waited to be interrogated by Special Agent Luis DeJesus (FBI) and Detective Elmer Baylor of the D.C. Metropolitan Police Department Bank Robbery Task Force.

8.    The nature of the interrogation by Special Agent De Jesus and Detective Baylor on May 12, 2008 regarded only questions about the April 2, 2008 robbery of the Washington First Bank and other bank robberies that reportedly occurred during the early months of 2008 in the Northwest quadrant of the District of Columbia.

9.    The interrogation of Stubblefield by Special Agent De Jesus and Detective Baylor was videotaped and show that Stubblefield was in custody and not free to leave on May 12, 2008.

10.    At the conclusion of said interrogation Stubblefield was charged by Detective Baylor with Possession of Drug Paraphernalia pursuant to District of Columbia Criminal Code Section 48-1103.

11.    On May 12, 2008 Detective Baylor was not present at the scene when Stubblefield was searched and hence, he had no personal knowledge of the incident of Stubblefield's arrest on the Drug Paraphernalia Possession charge.

12.    On May 12, 2008 Stubblefield was photographed as part of the booking process on the Drug Paraphernalia Possession charge.

13. AFTER STUBBLEFIELD was PHOTOGRAPHED during THE booking Process ON THE DRUG PARAPHERNALIA CHARGE ON MAY 12, 2008, LATER THAT day SPECIAL AGENT DeJesus AND Detective BAYLOR begin TO use STUBBLEFIELD's booking PHOTOGRAPH ON THAT CHARGE IN NUMEROUS PHOTO ARRAYS wherever STUBBLEFIELD was identified ACCORDING TO FBI TESTIMONY, AS THE bank Robber determined bY THE FBI IN Case File No. 91A-WF-238062, WASHINGTON, D.C. Field Office.

14. ON MAY 13, 2008, THE SUPERIOR Court OF THE DISTRICT OF Columbia dismissed THE DRUG PARAPHERNALIA POSSESSION CHARGE. See: ATTACHMENT-A. EXHIBIT-5.

15. ON AUGUST 13, 2008, Ms. HEATHER H. SHANER entered Her INITIAL APPEARANCE AS Counsel For THE defense in United States v. Mark Stubblefield, Criminal No. 08-171 (HHK).

16. The Trial commenced ON JANUARY 26, 2009.

17. PRIOR TO Trial Ms. SHANER Filed no Motion For DISCOVERY SOUGHTING exculpatory evidence.

18. AT THE COURTS APPOINTMENT OF Ms. SHANER, Ms. SHANER Told THE Court she would be READY TO Proceed IN JANUARY of 2009, eventhough she was currently dealing with A case involving Hundreds and Thousands of documents AND audios that Needed To be reviewed. SEE: United States v. Stubblefield, Criminal No. 08-171, Motion To Reconsider, February 4, 2009, Page 51.

7

19. When Stubblefield initially met with Ms. Shaner, He informed Her that the arresting officers Had no Probable cause to stop, search, and arrest Him on May 12, 2008.

20. On December 9, 2008, Ms. Shaner told the Court that Stubblefield did inform Her that the arresting officers Had no Probable cause to stop, search, and arrest Him on May 12, 2008. See: United States v. Mark Stubblefield, Criminal No. 08-171 (HHK) Motion Hearing Transcript December 9, 2008, Page 15.

21. In addition, at the Motion Hearing Ms. Shaner acknowledged that she should Have but decided not to Move the Court on Motion to Suppress evidence derived From Stubblefield's illegal search, arrest, and the interrogation as Fruit-of-the-Poisonous-Tree. See: United States v. Mark Stubblefield, Criminal No. 08-171 (HHK), Motion Hearing Transcript December 9, 2008, Page 15.

22. During the Motion Hearing on December 9, 2008, Ms. Shaner Made an attempt to raise the issue that there was no Probable cause to stop Stubblefield on May 12, 2008. In Response to counsel's assertion, the Government objected and the Court Sustained that objection upon the basis that counsel for the defense Had not Filed a Motion contesting that the stop of Stubblefield

ON MAY 12, 2008 WAS ILLEGAL. SEE:
United States v. Mark Stubblefield, Criminal No.
08-171 (HHK), Motion Hearing Transcript,
December 9, 2008, Pages 13-16.

## STANDARD OF REVIEW

INEFFECTIVE ASSISTANCE OF COUNSEL
claims must meet the TWO-PRONGED
TEST OF (1) Counsel's Performance fell
below an objective standard of
REASONABLENESS; AND (2) Counsel's deficient
Performance Prejudiced the defendant
Resulting in an unreliable or Fundamentally
unfair outcome of the Proceeding. Both
Parts of the Test must be met.

SEE: STRICKLAND v. WASHINGTON, 466 U.S. 668,
104 S. CT. 2052 (1974).

## ARGUMENT

GROUND ONE:
23. When a Police officer stops an individual
and restrains his freedom, he has "seized" that person
within the meaning of the Fourth Amendment. A careful
exploration of the outer surfaces of a person's
clothing in an attempt to find weapons is a "search"

9

UNDER CONSTITUTIONAL PROTECTION OF THE FOURTH AMENDMENT.
IN CONTRAST, WHERE A REASONABLY PRUDENT OFFICER IS
WARRANTED IN THE CIRCUMSTANCES OF A GIVEN CASE IN
BELIEVING THAT HIS SAFETY OR THAT OF OTHERS IS ENDANGERED,
HE MAY MAKE A REASONABLE SEARCH FOR WEAPONS OF THE
PERSON BELIEVED BY HIM TO BE ARMED AND DANGEROUS
REGARDLESS OF WHETHER HE HAS PROBABLE CAUSE TO
ARREST THAT INDIVIDUAL FOR A CRIME OR THE ABSOLUTE
CERTAINTY THAT THE INDIVIDUAL IS ARMED. THE
REASONABLENESS OF ANY PARTICULAR SEARCH AND SEIZURE
MUST BE ASSESSED IN THE LIGHT OF THE CIRCUMSTANCES
AGAINST THE STANDARD OF WHETHER A REASONABLE MAN
OF REASONABLE CAUTION IS WARRANTED IN BELIEVING THAT
THE ACTION TAKEN WAS APPROPRIATE. SEE:
TERRY V. OHIO, 392 U.S. 1, 88 S.CT. 1867 (1968).
IN ACCORD, A TERRY STOP IS PERMISSIBLE WHEN POLICE
HAVE A REASONABLE SUSPICION, GROUNDED IN SPECIFIC
AND ARTICULATE FACTS, THAT A PERSON THEY ENCOUNTER
WAS INVOLVED IN OR IS WANTED IN CONNECTION WITH A
COMPLETED FELONY. U.S. V. HENSLEY, 469 U.S. 221,
105 S.CT. 675 (1985).

    23.   IN THE INSTANT CASE, THE SEARCH WAS
UNREASONABLE BECAUSE THE OFFICERS WHO DETAINED
STUBBLEFIELD AT THE SCENE OF THE SEARCH WENT INTO
STUBBLEFIELD'S POCKET IN SEARCH OF EVIDENCE AND
WHERE OFFICERS DISCOVERED AN INCH AND A HALF
LONG CRACK COCAINE STEM. WHEN STUBBLEFIELD WAS

Initially patted down at the scene of the stop, the crack cocaine item was not detected in Stubblefield's pocket during that search ostensibly for weapons.

24.    The Government alleges that Stubblefield was stopped on May 12, 2008 after an FBI agent received a call from an FBI informant, stating that the suspect wanted in various bank robberies was located at a specific location. See: ATTACHMENT-A, EXHIBIT-3, Page 3, Para., 13 through page 4, Para., 13.

25.    The Government's report, designated herein as EXHIBIT-3 does provide no reliable information to justify the stop, search, and arrest of Stubblefield on the basis of probable cause.

26.    In Florida v. J.L., 529 U.S. 266 (2000), the Police received an anonymous tip that a young black male at a bus stop was wearing a plaid shirt and carrying a gun. At the stop, the Police found three young black males including one who was wearing a plaid shirt. Apart from the tip, the officers had no reason to believe that any of the males was engaged in illegal conduct. The officers immediately frisked defendant and found a gun in his pocket, and charged him with carrying a concealed firearm. The Court invalidated the search:

[T]Here are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." [The] reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: it will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

Note: Case 1;08-mj-0011-AK, Judge Alan Kay said that the person in the complaint may not be responsible for the crimes, see page 12, Lines 1-3

27. In United States v. Mark Stubblefield, Case 1;08-mj-0011-AK, see p 40, lines 16-18), the Government conceded on record that the composite sketch alleged by Special Agent DeJesus to have been identified by an F.B.I. informant who is known only to an unidentified F.B.I. Agents does resemble Stubblefield who became subjected to an unlawful stop, search, and seizure upon the basis of the informant's information allegedly told to an unidentified F.B.I. Agent that Stubblefield is the suspect depicted in the sketch which was issued by law enforcement as a Wanted Poster.

28. Defense counsel Heather H. Shaner rendered deficient Performance when she failed to file Motion to quash the indictment on the basis of lack of Probable cause because the composite sketch asserted by the Government not to resemble Stubblefield on one hand was used on the other hand to predicate Probable cause to stop, seize, and actually search Stubblefield.

28. For the foregoing reasons Heather H. Shaner's deficient Performance resulted in Prejudice; an unreliable or fundamentally unfair outcome of the proceeding when counsel failed to move the district court on Motion to quash the indictment where the Composite sketch constituted exculpatory evidence.

GROUND TWO:

30.   Stubblefield contend that the booking photograph taken when he was booked on possession of Drug Paraphernalia constituted "Fruit" of his illegal arrest on that charge.

31.   Defense counsel Heather H. Shaner rendered deficient performance when she failed to file motion to suppress Stubblefield's booking photograph and any anticipated government testimony derived from government witnesses who viewed Stubblefield's booking photograph on that charge.

32.   In addition, defense counsel's failure to file motion to suppress Stubblefield's booking photograph and any anticipated government testimony derived from government witnesses who viewed Stubblefield's booking photograph; that the government's use of that particular photograph in a photo line up constituted the use of the "Fruit" of an unlawful arrest and resulted in prejudice, an unreliable or fundamentally unfair outcome of the proceedings.

33.   Stubblefield asserts that all evidence obtained as a result of the exploitation of his unlawful arrest should have been suppressed as the "Fruit of the Poisonous Tree." See: United States v. Crews, 445 U.S. 463 (1980); Dunaway v. New York, 442 U.S. 200 (1979);

14

Wong Sun v. United States, 371 U.S. 471 (1963).

GROUND THREE:

34. According to the lead FBI investigator, Luis DeJesus, a tipster who is known only to a secret FBI agent, somehow contacted that unidentified FBI agent and allegedly stated that he/she knows the suspect shown in the Government composite sketch and circulated as a wanted poster, and that Stubblefield, believed by the tipster to be the bank robber, was located at a certain location in Washington, D.C. The record in this case remain silent in specifying who, when, or if any of the arresting law enforcement officers who are identified in paragraph 5 herein did receive tipster information prior to the stop of Stubblefield. In this case, there is no record of a radio run to corroborate that Stubblefield was stopped on May 12, 2008 based on reliable informant information.

35. On May 12, 2008, one of the arresting officers identified in paragraph 5 herein told Stubblefield that he stopped him on a hunch that he may be the suspect in the wanted poster.

36. During his initial meeting with Heather H. Shaner as attorney of record, Stubblefield informed her that one of the six arresting officers told him that he was stopped on a hunch that he may be the wanted bank robber. In addition, Stubblefield told Ms. Shaner that he was charged with possession of drug paraphernalia by Detective Baylor, one of the law enforcement officials investigating the bank robberies, and that Detective Baylor had no personal knowledge of whether he possessed drug paraphernalia on May 12, 2008 because Detective Baylor was not present at the scene of the search.

37. Stubblefield contend that he was charged with possession of drug paraphernalia as a pretext to search for evidence to connect Stubblefield to bank robbery. This assertion is corroborated by the fact that Detective Baylor deliberately charged Stubblefield with an offense upon the basis of no personal knowledge that Stubblefield committed the charged offense and then, he immediately proceeded to use the booking photograph on that charged offense to obtain out-of-court photographic identifications which was later used to apply for probable cause to arrest Stubblefield

and to indict him on six counts of bank robbery
and one count of attempted bank robbery.

38. An arrest may not be used as a pretext
to search for evidence. United States v. Lefkowitz,
285 U.S. 452, 52 S.Ct. 420 (1932); Accord,
Williams v. United States, 418 F.2d 159 (5th Cir. 1969),
Aff'd, 401 U.S. 646, 91 S.Ct. 1148 (1971).

39. Defense counsel Heather H. Shaner
rendered deficient performance when she
failed to raise the issue in the District
Court that Stubblefield's arrest on the minor
offense was motivated to allow the FBI to
search for evidence of the unrelated offense
of bank robbery for which the FBI lacked
probable cause to arrest Stubblefield prior
to the minor arrest on May 12, 2008.

40. Defense counsel's failure to raise
the issue that Stubblefield's arrest on the
minor offense was a pretext to search for
evidence of bank robbery resulted in
prejudice; an unreliable or fundamentally
unfair outcome of the proceeding where
the factual record is sufficient to determine
that the minor arrest as stated herein was
a pretext to search for evidence of bank
robbery. A reasonable competent attorney
would have moved the District Court on motion

17.

To suppress as unconstitutional under the Fourth Amendment Stubblefield's videotaped statements and the booking photograph of Stubblefield obtained by the Government while Stubblefield was being held in custody on the minor offense that was dismissed by the Court on May 13, 2008.

## Conclusion

Stubblefield respectfully moves this Court to order an Evidentiary Hearing to determine whether Stubblefield's conviction should be vacated and set aside for further proceedings on the basis that the conviction violated the Fourth, Fifth and Sixth Amendments of the Constitution of the United States.

Respectfully submitted.

*Mark Stubblefield*

Mark Stubblefield #01213-000
F.C.I. Williamsburg
P.O. Box 340
Salters, SC 29590

18

VERIFICATION

I, Mark Stubblefield, Hereby declare under
Penalty of Perjury That The Facts Stated in The
Foregoing Memorandum are True and correct.

Dated: 6/15/2012 By: Mark Stubblefield
                        Mark Stubblefield

# ATTACHMENT: A

# EXHIBIT 1

MAY-15-2008  17:51        3539414                                3539414    P.08

FD-302 (Rev 10-6-95)

_pg 3_
_Cancer doctor_

                                        - 1 -
                        **FEDERAL BUREAU OF INVESTIGATION**

                                        Date of transcription  04/30/2008

        Dr. STEVEN R. PATIERNO, Executive Director of Cancer
Center, GEORGE WASHINGTON UNIVERSITY CANCER INSTITUTE,
Washington, D.C., telephone number 202-994-3727.  The interview
was conducted via the telephone.  After being advised of the
official identity of the interviewing Agent and the nature of
the interview, Dr. PATIERNO provided the following information:

        Dr. PATIERNO provided information regarding head and
throat cancer.  Dr. PATIERNO stated that a patient with cancer
in the jaw would have some sort of facial deformity.  The cheeks
would appear sunken in and the jaw bones would not appear
present.  Depending on the severity of the cancer, the scarring
on the cheek would differentiate.  Scarring could be minimal
depending on the surgeon or could be from the upper ear down to
the throat and neck area.

        In a majority of the cases regarding head and throat
cancer, the cancer is secluded to only one side of the face.  As
a result of the cancer, the body will stop making saliva.  The
vocal chords would also be affected and the voice of the patient
would sound raspy and machine like.

        A person suffering from head and throat cancer would
have to go through a long process of multiple evaluations and a
very complex follow up program.  The cost without any insurance
could be upwards into the tens of thousands of dollars.

        Dr. PATIERNO was then requested to view a sketch of a
serial bank robber.  A copy of this same sketch is maintained in
this file.  Dr. PATIERNO stated the sketch of the serial bank
robber could resemble the effects of a patient of head and
throat cancer.  Dr. PATIERNO stated that the way the lips on the
left side move upward could be a result of the deformity from
the surgery to remove the cancer.

        Dr. PATIERNO advised that he would print off the sketch
and distribute it to the doctors who deal with this type of
cancer in his hospital.

        121LA005.302

---

Investigation on   4/30/2008   at  Washington, D.C.        (telephonically)

File #  91A-WF-238062-34                       Date dictated  4/30/2008

    SA Luis A. DeJesus

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency

# EXHIBIT  2

MAY-15-2008  17:55       3539414                    3539414   P.26

Teller did sketch

91A-WF-238062
LAD:lad  -22

1

     On April 10, 2008, Officer Percy White, with the
United States Secret Service met with ████████████, a
teller with WASHINGTON FIRST BANK, 1500 K Street Northwest,
Washington, D.C., 20005, at her place of employment.  White
completed a composite sketch of the unknown male individual
who has robbed the above mentioned bank on the following
dates: January 29, 2008, March 26, 2008, and April 7, 2008.
GONZALEZ has been a victim in two of those robberies.

     Attached to this insert is a copy of the Composite
sketch drawn by White.

1051ad02.302

MAY-15-2008   17:56          3539414                              3539414   P.27



HU 1/2

Pg 1



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No.
    91A-WF-238062

Scars/Tattoos:      Scar on left cheek bone.  fairly large
spider web scar.  Skin on scar is
darker

FBI Washington Field Office Evidence Response Team
responded to the scene, however no evidence was seized.

The loss to the bank was $2,657.00.

1011ad02.1hm

# EXHIBIT  3

AO 91 (Rev. 5/85) Criminal Complaint                                    F(1)(A) , F(3)(A)

# United States District Court
## For The District of Columbia

UNITED STATES OF AMERICA

v.

MARK STUBBLEFIELD
DOB: 9/28/57
PDID: 371-524

# CRIMINAL COMPLAINT

CASE NUMBER:   0 8 - 3 1 1 - M   0 1

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and

belief.  On or about ___APRIL 7, 2008___ in __WASHINGTON__ county, in the _____ District of ___COLUMBIA___

____ defendant(s) did, (Track Statutory Language of Offense)

willfully and unlawfully, and by intimidation, did take from the person or presence of another, approximately
$2,657.00 in money, belonging to and in the care, custody, control, management, and possession of Washington First
Bank, located at 1500 K Street, N.W., Washington, D.C., the deposits of which were insured by the Federal Deposit
Insurance Corporation (FDIC).

in violation of Title ___18___ United States Code, Section(s) _____2113(a)_____.

I further state that I am ___SPECIAL AGENT LUIS DEJESUS___, and that this complaint is

based on the following facts:

## SEE ATTACHED STATEMENT OF FACTS

Continued on the attached sheet and made a part hereof:        ☒ Yes   ☐ No

_____
Signature of Complainant
SPECIAL AGENT LUIS DEJESUS
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me and subscribed in my presence,

MAY 1 3 2008                              at

Date
ALAN KAY
U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

Washington, D.C.
City and State

_____
Signature of Judicial Officer
ALAN KAY
U.S. MAGISTRATE JUDGE

HU 1/2

08-311-M 01

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR MARK STUBBLEFIELD

I, Luis DeJesus, Special Agent (SA) with the Federal Bureau of Investigation (FBI),

Washington Field Office (WFO), Washington, D.C. (hereinafter affiant), being duly sworn, depose

and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation.   I am currently

assigned to the Bank Robbery Squad in Washington, D.C., and have been so assigned since January,

2008.  I have been a Special Agent with the FBI since August 2006.  I have participated in

investigations and search warrants, resulting in the convictions of several defendants.

2.      This affidavit is submitted in support of an arrest warrant for **MARK**

**STUBBLEFIELD**, date of birth 9/28/57, for Bank Robbery, in violation of 18 U.S.C. 2113(a).

3.      The facts and information contained in this affidavit are based upon my personal

knowledge and the investigation and observations of other officers and agents involved in the

investigation. All observations referenced below that were not personally made by me were related

to me by the persons who made such observations. This affidavit contains information necessary to

support probable cause for this application. It is not intended to include each and every fact and

matter observed by me or known to the government. The facts and circumstances of the offense and

subsequent identification of the suspect are described below.

4.      On April 7, 2008, at approximately 10:42 am, a lone black male wearing a tan trench

coat and carrying an open black umbrella walked into the Washington First Bank, 1500 K Street,

Northwest, Washington, D.C., a federally insured financial institution and approached a teller

window screaming "This is a robbery!  Give me large bills." The umbrella served to block the

suspect's face from the bank surveillance cameras, but did not serve to block the suspect's face from

the people in the bank. The suspect advised two bank employees "Do not move!" One of these employees (hereinafter Employee 1) was seated at the entrance to the bank, and pressed the silent alarm. Employee 1 had an unobstructed view of the suspect's face.

5.     When the suspect arrived at the teller window, a bank teller provided him with $100 from a teller drawer. This $100 consisted of five twenty dollar bills of "bait" money. Bait money is currency with serial numbers which are recorded by the bank. This list of serial numbers is maintained by the bank for future comparison. After the bank teller provided the suspect with the $100 in bait money, she said "I do not have any large bills" and displayed an empty teller drawer.

6.     The suspect responded "Yes you have. Give me all $100 bills. This is a robbery. Hurry up!" The suspect then reached into his trench coat as though reaching for a weapon. The bank teller victim then accessed a lower bank drawer which contained additional banking funds. The bank teller victim provided the suspect with the money from this lower drawer. As this was happening, the suspect continued screaming "Give me all your large bills!" As the bank teller victim was collecting this money, another bank employee entered the bank lobby, where the robbery was taking place. The suspect said to the bank employee "Stop! Don't move!" The suspect then took the additional money from the bank teller victim and fled the scene.

7.     The victim bank teller described the suspect as a light complected black male, between 40 and 50 years of age, approximately 5'2" tall. Employee 1 described the suspect as a black male, between 36 and 45 years of age, between 5'1" and 5'2" tall.

8     The bank has determined that the suspect received $2,657.00 in total

9     Upon exiting the bank, the suspect was seen taking a left onto K Street, NW, towards the intersection of 16th and K Streets, NW.

2

10.     Further investigation revealed surveillance footage taken by cameras maintained by the Capital Hilton Hotel, located on the corner of 16th and K Streets, NW, which is located on the same block as the Washington First Bank. Your affiant reviewed the video footage taped on April 7, 2008, between approximately 10:30 a.m. and 11:15 a.m. The footage showed that within moments of the robbery of Washington First Bank, a black male wearing a trench coat and carrying an umbrella ran up to the side entrance of the Capital Hilton Hotel on K Street, NW. The footage then shows the suspect entering the hotel lobby and exiting through the front door onto 16th Street, Northwest. Upon exiting through the front door, the suspect attempted to enter a waiting cab. He was stopped by a hotel bellboy and directed to another cab. Video surveillance shows the suspect entering a cab, which then drove away.

11.     On April 8, 2008, your affiant located and interviewed the cab driver who picked up the suspect from the front of the Capitol Hilton Hotel on April 7, 2008. The cab driver informed your affiant that he dropped the suspect off at the corner of 7th Street, NW, and Florida Avenue, NW, and that the suspect paid his fare in cash, with a twenty dollar bill. The cab driver provided your affiant with the funds he received while working on April 7, 2008. Review of that currency revealed a twenty dollar bill with a serial number matching the serial number of one of the twenty dollar "bait" bills which was stolen from Washington First Bank on April 7, 2008.

12.     The victim bank teller met with a Secret Service sketch artist, who composed a sketch of the suspect. This sketch was circulated throughout Washington, D.C. by the Metropolitan Police Department.

13.     While canvassing the Washington, D.C. area with a flyer containing the sketch, an FBI agent encountered a citizen who identified the subject of the sketch as someone he/she knew.

3

The citizen further indicated that the suspect frequented the area surrounding 7th Street, NW, and Florida Avenue, NW. On May 12, 2008, the citizen contacted the FBI agent and stated that the suspect was located at 7th Street, Northwest, and Rhode Island, Northwest. Metropolitan Police Officers responded to the scene in a marked police car. As the police officers approached, the suspect fled on foot. A chase ensued, and the suspect was apprehended at the rear of 626 S Street, Northwest. The suspect was subsequently arrested for possession of drug paraphernalia. The suspect provided the name of Michael Smith.

14.     The suspect was taken to Metropolitan Police Headquarters, where he was fingerprinted. His fingerprints were run through AFIS, which revealed his true name to be **MARK STUBBLEFIELD**, date of birth 9/28/57.

15.     **STUBBLEFIELD** is a 50 year old black male, and he is 5'2" tall.

16.     A nine photograph photo array was created.   This photo array contained **STUBBLEFIELD'S** May 12, 2008 booking photograph.  This photo array was presented to Employee 1, who positively identified **STUBBLEFIELD'S** photograph as the person who robbed Washington First Bank on April 7, 2008. This photo array was also presented to the victim bank teller, who did not identify **STUBBLEFIELD**, but who indicated that the photograph of **STUBBLEFIELD** resembled the person who robbed Washington First Bank on April 7, 2008.

4

17.     Based on the foregoing, the affiant submits that there is probable cause to believe that

on or about April 7, 2008, **MARK STUBBLEFIELD** did unlawfully, knowingly and intentionally,

rob the Washington First Bank, 1500 K Street, Northwest, Washington, D.C., in violation of 18

U.S.C. 2113(a).

_____
Luis DeJesus, Special Agent
Federal Bureau of Investigation

## MAY 1 3 2008

Sworn and subscribed to before me this _____ day of May, 2008

_____
United States Magistrate Judge
**ALAN KAY**
**U.S. MAGISTRATE JUDGE**

5

# EXHIBIT  4

| change | ☒ Information | | Possession of Drug Paraphernalia | | 9 COMPLAINT NUMBER<br>0€ 063-737 |
|---|---|---|---|---|---|
| | | 6 DATE OF THIS REPORT<br>5/13/08 | 7 REPORTING ELEM<br>3rd District | 8 CLASSIFICATION OF REPORT CHANGED TO | |

| 9 DATE AND TIME OF EVENT<br>05/12/08 0749 | 10 DATE AND TIME OF ORIG RPT<br>05/12/08 0900 | 11 EVENT LOCATION<br>R/O 626 S street N.W. | | | 12 PROPERTY TYPE<br>Private |
|---|---|---|---|---|---|
| 13 RADIO RUN RECEIVED<br>A | 14 DESCRIBE LOCATION<br>Rear of Church | | 15 WHERE ENTERED | 16 TOOLS/WEAPONS | 17 METHODS<br>possessed |

| COMPLAINANT/MISSING PERSON/FIRM<br>Society | SEX | RACE | DATE OF BIRTH | COMPLAINANT/MISSING PERSON/FIRM | SEX | RACE | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|

| | | RACE | SEX | AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | SCARS | HAT | COAT | JACKET | PANTS | SHIRT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Suspect/Missing Person | ☐ SUSPECT<br>☐ MISSING<br>PERSON | | | | | | | | | | | | | | |
| | ☐ SUSPECT<br>☐ MISSING<br>PERSON | RACE | SEX | AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | SCARS | HAT | COAT | JACKET | PANTS | SHIRT |

**20. SOLVABILITY FACTORS** Complete each item below. If additional space is needed, use the narrative section. If necessary, use PD Form 251-A.
Refer to the specific item numbers when continuing information in the narrative section or on PD Form 251-A

| | | | If yes, enter name(s), address(es), phone number(s), hours of availability and brief account. |
|---|---|---|---|
| IS THERE A WITNESS? | ☒ YES ☐ NO | | Ofc. Shedrick, M. #3539 3rd District, Ofc. Wallace, P. #5554 3rd District<br>Ofc. Ashby, E. #2756 3rd District, Ofc. Jefferson, R. #2614 3rd District<br>Ofc. Jolly, D. #2994 3rd District, Ofc. Bialeski, M. #2531 3rd District |
| IS A SUSPECT NAMED? | ☒ YES ☐ NO | | Enter the name and include any nickname used.<br>Mark Stubblefield B/M 09/28/57 |
| IS THE STOLEN PROPERTY TRACEABLE? | ☐ YES ☐ NO | | Include reason why or why not. |
| IS PHYSICAL EVIDENCE PRESENT? | ☒ YES ☐ NO | | Describe it.<br>Glass stem pipe |
| IS THE PERPETRATOR KNOWN TO THE VICTIM? | ☐ YES ☐ NO | | If yes, describe the relationship. |
| WAS A REFERRAL FORM GIVEN TO THE COMPLAINANT? | ☐ YES ☐ NO | | Give any address, place of employment, or hangout known for the perpetrator(s). |
| DURING WHAT HOURS IS COMPLAINANT AVAILABLE FOR INTERVIEW | | | List the name, address, phone number and any information provided when the area was canvassed |
| Is be completed by crime analysis | IS AN MO OR PATTERN INDICATED?<br>☐ YES ☐ NO | | DESCRIBE MO OR PATTERN |

**21 ADDITIONAL STOLEN PROPERTY** — Property Book

| CODE | ITEM | SERIAL NO./OPERATION ID NO. | MODEL NO. | COMP VALUE | AGE | MPDC VALUE | |
|---|---|---|---|---|---|---|---|
| | | | | | | | BOOK/PAGE NO. |
| | | | | | | | ADDITIONAL VALUE |
| | | | | | | | ORIGINAL VALUE |
| YEAR | MAKE | MODEL | COLOR | BODY | TAG / STATE / YEAR | VEHICLE IDENTIFICATION NO. | TOTAL PROP. VALUE |

NARRATIVE: Record your activity and all developments in the case subsequent to your last report. List the names, addresses, sex, race, age, and arrest numbers of all arrested persons. Explain any change in classification. List the names, addresses, and telephone numbers of all witnesses and suspects.

On the listed date and time, the listed defendant was found in possession of the described physical evidence while in the rear of 626 S Street N.W. Washington, D.C. This defendant was arrested for Possession of Drug Paraphernalia. This case was closed with the arrest MARK STUBBLEFIELD b/m 09/28/57 arrest number 090800315.

| STATUS<br>OPEN ☐ PRIOR CLOSED ☒ CLOSED | ☐ UNFOUNDED (EXPLAIN IN NO. 22)<br>☐ SUSPENDED (EXPLAIN IN NO. 22) | 24 TELETYPE NO. | 25. SOLVABILITY RATING | 26. SOLVABILITY CLASSIFICATION |
|---|---|---|---|---|
| INVESTIGATIVE OFFICER'S RECOMMENDATION<br>☐ SUSPEND ☐ INVESTIGATE FURTHER | | 27. SUPERVISOR'S RECOMMENDATION<br>☐ SUSPEND ☐ INVESTIGATE FURTHER | | |
| REPORTING MEMBER'S SIGNATURE | BADGE/ELEM | 30. INVESTIGATOR'S SIGNATURE | BADGE/ELEM | 31. SUPERVISOR'S SIGNATURE | BADGE/ELEM |
| INVESTIGATIVE REVIEW OFFICER | | 33. SUPERVISOR | BADGE/ELEM | 34 REVIEWER | 35. DISTRIBUTION |

* Value of vehicles will be entered by the Information Processing Section,
Data Processing Division

Page _____ of _____ Pages

# EXHIBIT  5

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
#### Criminal Division

#### No Paper Slip

Lock Up # __5__

Sex/DV Case ☐

UNITED STATES

Officer/Badge #: __DD-197__

Date of Offense: __5/12/08__

vs.

Defendant's DOB: _____

Mark Stubblefield

Defendant's PDID: __-__

The above named defendant was originally charged with __PDP__

and now has.

☑ No Charge

Therefore, please

☑ Release Defendant from custody in this case only

__5/13/08__
Date

_____
Assistant United States Attorney/Paralegal

Revised February 8, 2006