## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **Criminal No. 08-171 (RCL)** |
| **MARK STUBBLEFIELD,** | ) |  |
|  | ) |  |
| **Defendant.** | ) | **FILED** |
|  | ) |  |

MAR 2 0 2013

Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

Before the Court is defendant Mark Stubblefield's pro se Motion [109] to Vacate, Set

Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  Defendant claims he received

ineffective assistance from his trial counsel and requests that the Court order an evidentiary

hearing to determine whether he is entitled to relief under § 2255.  Upon consideration of the

Motion and supporting Memorandum [109], the Government's Opposition [114], the defendant's

Reply [116], the entire record herein, and the applicable law, the Court will deny the Motion for

the reasons set forth below.

## I.       BACKGROUND

### A.       Defendant's Underlying Offenses

Defendant's criminal conduct in this matter began with the robbery of Washington First

Bank at 1500 K Street, N.W., in the District of Columbia on January 29, 2008, and lasted until

his arrest on May 13, 2008.  Presentence Investigation Report ¶¶ 4–5, Revised May 7, 2009, ECF

No. 69 ("PSR").  On January 29, March 26, and April 7, 2008, the Washington First Bank was

robbed by a man witnesses described on each occasion as a very short black man with an unusual

facial complexion.  *See* Opp'n 2, ECF No. 114 (citing trial transcripts).  On March 21 and April

11, 2008, a witness-described short black man with an unusual facial complexion robbed United Bank at 1875 I Street, N.W. *Id.* at 4–5. Eyewitnesses at the respective institutions stated that the same individual perpetrated the repeated offenses. *Id.* at 3, 5. Following the second robbery at Washington First Bank on March 26, 2008, a witness-described very short black man with "a mark or scar on his face" attempted to rob Urban Trust Bank at 1350 I Street, N.W. *Id.* at 7. Additionally, on April 21, 2008, a witness-described short black man with an usual facial complexion robbed Commerce Bank at 1753 Connecticut Avenue, N.W. *Id.* at 6. In addition to the similar stature and "unusual facial complexion," witnesses frequently described the perpetrator as having a "raspy" voice and initiating the robbery or attempted robbery by passing a handwritten note to a teller. *See id.* at 3–7. The perpetrator procured a total of $15,644 as a result of these bank robberies. PSR ¶ 15.

## B.     The Criminal Investigation and Arrest

After robbing the Washington First Bank on April 7, 2008 ("the April 7 bank robbery"), the perpetrator, wearing a trench coat and carrying an umbrella, exfilled west on K Street towards 16th Street, N.W. *See* Opp'n 15. Video surveillance from the Capital Hilton Hotel, located at 16th and K Streets, N.W., recorded a black man wearing a trench coat and carrying an umbrella running up K Street minutes after the robbery, briefly entering the hotel, and then exiting onto 16th Street and entering a taxi. *Id.* FBI Special Agent Luis DeJesus used this video surveillance to locate the driver of the taxi in which the perpetrator completed his getaway. *Id.* at 16. The driver provided Special Agent DeJesus the intersection where he dropped off the perpetrator—7th Street and Florida Avenue, N.W.—and the twenty-dollar bill used to pay for the fare. *Id.* The serial number on that twenty-dollar bill matched the serial number of one of the "bait" bills provided to the robber at Washington First Bank. *Id.*

A U.S. Secret Service sketch artist met with a bank teller who witnessed two robberies at Washington First Bank and created a sketch of the perpetrator, which law enforcement circulated throughout the District of Columbia. *Id.*; *see also* 05/16/08 Tr. 18, ECF No. 17. The teller described the perpetrator as a black male approximately forty to fifty years old, approximately five feet two inches in height, and with some "facial disfiguration or scarring on the left cheek." *See* 05/16/08 Tr. 18; DeJesus Aff. ¶ 7, ECF No. 1-1. During canvassing operations, a citizen informed an FBI Agent that the sketch resembled an individual he knew and that the individual "frequented the area around 7th Street, N.W., and Florida Avenue, N.W." (where the suspect was dropped off after the April 7 bank robbery). DeJesus Aff. ¶ 13. On May 12, 2008, the same citizen notified the FBI[1] that he made contact with the suspect at 7th Street and Rhode Island Avenue, N.W. (three blocks from 7th Street and Florida Avenue, N.W.). *Id.* at 25; *see also* 12/09/08 Tr. 130, ECF No. 62 (citing grand jury testimony of Special Agent DeJesus stating that the informant "stated he heard someone talking to him and referred to him by the name Mark").

Metropolitan Police Department ("MPD") officers arrived at the identified intersection in a marked cruiser and approached the suspect. *Id.* at 16. In his affidavit, Special Agent DeJesus reported that the suspect fled from the approaching officers, who gave chase and eventually apprehended the suspect two blocks away. *See id.* at 16, 25. MPD Detective John Reese later testified, in a pre-trial motions hearing, to the actions taken by him and other law enforcement personnel during the stop and arrest of Mr. Stubblefield: "I became aware of a subject who is currently being sought for some bank robberies in the area and received some information that

---

[1] The government inconsistently identified the FBI Agent who spoke with the tipster on May 12, 2008. *Compare* Opp'n 16 ("citizen contacted Agent DeJesus"), *with id.* at 25 ("citizen contacted that FBI agent"), *and* DeJesus Aff. ¶ 13, ECF No. 1-1 ("citizen contacted the FBI agent"). Special Agent DeJesus testified that his affidavit was true and accurate during defendant's preliminary and detention hearing on May 16, 2008, *see* 05/16/08 Tr. 6; therefore, the Court finds as a matter of fact that the informant notified the FBI Agent he encountered during canvassing operations and not Special Agent DeJesus.

this particular subject of interest was in a part of town and basically responded to that and became involved . . . ." 12/09/08 Tr. 12.

> Myself and my partner, Agent Sanborn, arrived almost simultaneously as a uniformed member of the police department was approaching Mr. Stubblefield in [a] sunken patio area in the rear of [an] apartment building [in the alley of 7th and S Street, N.W.].
> . . .
> I got there in a millisecond after apparently he was asked to go ahead, and you know, lie on the ground, and he was subsequently placed in a pair of handcuffs, patted down very quickly, and then removed from the patio through a door in this building and taken out to the alley where our vehicles were.
>
> At that point, we asked Mr. Stubblefield, of course, his name, and at that point is when he elicited the response that his name was Michael Smith.
> . . .
> [At the time I arrived], he was not free to go. He was stopped.

*Id.* at 17–18, 20.

At some point during this stop, law enforcement searched the suspect and found a "crack cocaine stem" in his possession.[2] *See* Opp'n 11, 16–17; Mem. in Support of Mot. Vacate 10–11, ECF No. 109 ("Def.'s 2255 Mem."). The suspect was then arrested for possession of drug paraphernalia ("PDP") and taken to MPD headquarters where a fingerprint analysis positively identified him as Mark Stubblefield, a 5'2" African American male born in 1957. Opp'n 17; 05/16/08 Tr. 38. Law enforcement used Mr. Stubblefield's booking photograph in a photo array shown to two of the April 7 bank robbery witnesses, one of whom positively identified Mr. Stubblefield as the robber, while the other at first said it was not him, but then stated he looked like the robber. 05/16/08 Tr. 28–30. Incorporating the photo array identification into his affidavit, Special Agent DeJesus received and executed an arrest warrant against Mark

---

[2] Detective Reese offered no testimony regarding the search of Mr. Stubblefield that led to the discovery of drug paraphernalia upon which his subsequent arrest was based. However, Judge Kennedy limited Detective Reese's testimony during the December 9, 2008, motions hearing to matters relating to the claimed Miranda violations; thus, the court precluded, at that time, a full inquiry into the events that gave rise to Mr. Stubblefield's arrest for possession of drug paraphernalia. *See id.* at 13–16.

Stubblefield on May 13, 2008, for the criminal complaint charging him with bank robbery. *See*

Arrest Warrant, ECF No. 2.

### C. Procedural History

On May 16, 2008, Mr. Stubblefield appeared before Magistrate Judge Alan Kay in a

preliminary and detention hearing on the criminal complaint charging him with bank robbery.

*See* 05/16/08 Tr. 3. Federal Public Defender Jonathan Jeffress represented Mr. Stubblefield at

this hearing. *Id.* Mr. Jeffress argued that the complaint and accompanying affidavit sworn by

Special Agent DeJesus lacked a sufficient basis to support a finding of probable cause for the

preliminary hearing. *Id.* at 9–11. Judge Kay disagreed:

> Bearing in mind that this is not . . . proof beyond a reasonable doubt. . . . [T]he
> facts set forth in the complaint might well reflect evidence that the individual is
> not responsible for the crime, [but] the Court can still find probable cause . . .
> bearing in mind that the threshold is not very strong, the barrier is not very high.
> You've got an individual who had left the bank at a certain particular time, there
> was a camera following an individual who left the bank at that time, that he was
> wearing certain clothing, carrying an umbrella, that he went to the Capital Hilton
> on 16th and K Street.
>
> A cab driver picked up an individual at the Capital Hilton on that same date . . .
> maybe there is some time connection also, and that cab driver was paid by the
> individual that he picked up with a $20.00 bill that came from bait money given to
> the robber by the bank. I think, albeit not [] beyond a reasonable doubt at this
> point . . . there's enough for probable [cause].

*Id.* at 11–12.

Assistant U.S. Attorney Catherine Connelly questioned Special Agent DeJesus about Mr.

Stubblefield's facial complexion. *Id.* at 34–35. Special Agent DeJesus stated that Mr.

Stubblefield has "deep indentations . . . . Just when he's in a normal posture, when he's talking,

there's just divots . . . or impressions that are deep under his cheeks." *Id.* at 34. He further

explained that, when law enforcement attempted to photograph Mr. Stubblefield following his

arrest, he "did not want his photo taken, kept having his head down and puffing out his cheeks . . . . So that we could not get a good facial shot." *Id.* at 35.   Judge Kay found that the totality of the factors presented—the photo array identification by one robbery witness; Mr. Stubblefield's match to the witnesses description of the perpetrator's age, height, facial complexion, race, and gender; Mr. Stubblefield's location in the same area where the robber was dropped off; and Mr. Stubblefield's act of distorting the configuration of his face—supported a finding of probable cause. *See id.* at 41–42.

A grand jury handed down an indictment on June 13, 2008, charging Mr. Stubblefield with six counts of bank robbery and one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a).   Indictment, ECF No. 4.   Mr. Jeffress filed two motions to suppress in July 2008: a motion to suppress in-court and out-of-court testimony due to impermissibly suggestive identification procedures, *see* Mot. Suppress, ECF No. 14; and a motion to suppress defendant's post-arrest statements (providing a false name) and actions at police headquarters ("blowing up his cheeks in order to create an inaccurate photograph and thereby subvert the photo identification array"), *see* Mot. Suppress, ECF No. 15.   Neither of these motions alleged a Fourth Amendment violation.   Mr. Jeffress subsequently filed a motion to withdraw as counsel, citing Mr. Stubblefield's belief that Mr. Jeffress could not effectively represent him in the matter.   *See* Mot. Withdraw, ECF No. 16.   Judge Kennedy granted Mr. Jeffress's motion to withdraw and, on September 8, 2008, appointed Ms. Heather Shaner as attorney of record for Mr. Stubblefield. *See* Minute Entry accompanying ECF No. 19.

The court heard argument on the suppression motions on December 9, 2008.   *See generally* 12/09/08 Tr.   Ms. Shaner attempted to argue the defendant's Fourth Amendment claim—that he was illegally stopped on May 12, 2008—but Judge Kennedy refused to hear

argument on that matter as it was not properly before the court. *Id.* at 14–16. The unsubstantiated arguments of both parties nonetheless crept into discussion of the Fourth Amendment claim. *See id.* at 121–22 (Ms. Shaner: "He was being seized as a suspect. They didn't have probable cause at that time to arrest him for the bank robberies until they had the identification. They needed the photograph."); *id.* at 123 (Ms. Brooker: "I would just like to note for the Court that in fact when the Defendant was patted down . . . police felt what [] felt like a weapon and there was a pat down and they found a crack pipe . . . ."). Judge Kennedy again stopped the parties from proceeding down this evidentiary path, but stated that the court would later hear argument on the matter if a motion was filed. *See id.* at 123–24. Judge Kennedy denied both suppression motions, finding that questioning of defendant's name during his May 12 stop was not custodial in nature, *id.* at 130, and that defendant's act of puffing out his cheeks when police tried to photograph him was not a statement that could be suppressed, *id.* at 125. Judge Kennedy also found the photo arrays to be "excellent . . . to the extent that they all really do show persons who have facial characteristics that were similar to Mr. Stubblefield in terms of complexion . . . age . . . ethnicity . . . the shape of the head, so on and so forth." *Id.* at 133.

Prior to trial, Ms. Shaner filed oppositions to the government's evidentiary motions and filed a motion to suppress statements and testimony of a government informant. *See* Minute Entries accompanying ECF Nos. 28, 29, 35, 40. Additionally, during trial, Ms. Shaner filed a motion to reconsider the motion to suppress Mr. Stubblefield's post-arrest statements, in which she argued that video-taped statements made by the defendant during questioning at police headquarters were involuntary, and that the interrogation, conducted not by arresting officers but by Bank Task Force personnel, was of an investigatory nature "with an eye towards prosecution." *See* Mot. Recons., ECF No. 46. In that motion, Ms. Shaner acknowledged "[t]he

illegal nature of the arrest and search" were not at issue at that time, but were "facts for the Court
to consider in the 'totality of the circumstances' test." *Id.* ¶ 3.[3]   The court denied the motion.

Jury trial began on January 26, 2009, and included thirty-seven witnesses called by the
government over the course of six days, followed by the defense's eight witnesses, all who
testified on the same day. *See* Minute Entries for Case No. 1:08-cr-00171-RCL, Jan. 27–Feb. 9,
2009 ("Minute Entries").   None of the eyewitnesses to the bank robberies made an in-court
identification of the defendant; rather, their testimony focused on the pre-trial identifications
made upon presentation of the photo array created after defendant's arrest on May 12, 2008.[4]
*See* Reply 8; *accord United States v. Stubblefield*, 643 F.3d 291, 297 (D.C. Cir. 2011) ("At trial,
the government presented testimony from numerous witnesses to the six charged bank robberies,
each of whom described a perpetrator who resembled Stubblefield. The jury also heard that at
least one witness to each of the charged robberies had identified Stubblefield as the perpetrator
from a photo array.").   Apart from the out-of-court descriptions and identifications, the
government was unable to produce evidence directly linking the defendant to any of the bank
robberies. *See* Opp'n 10; Reply 8.

On February 13, 2009, the jury returned a verdict of guilty on all charged counts. *See*
Minute Entries, Feb. 13, 2009. Prior to sentencing, Judge Kennedy granted Ms. Shaner's motion
to withdraw as counsel, and new counsel was appointed by the Federal Public Defender's Office.

---

[3] Ms. Shaner stated that the defendant was arrested "[a]t the request of the Bank Task Force" " based on information
from an informant to the Bank Task Force that the 'suspect' bank robber was located at 6th [sic] and Rhode Island
N.W." *Id.* at 1–2.

[4] During trial, MPD Detective Elmer Baylor made an in-court identification of the defendant and noted that, since
his arrest, the defendant appeared to have "gained significant amount of weight and . . . is wearing glasses today, but
he wasn't then, and it looks like his face is slightly fuller." 1/27/09 Tr. 51–52, ECF No. 72. *See also* Opp'n to Mot.
Recons. ¶ 3, ECF No. 47 ("[D]efendant has gained over 40 pounds since the date of his arrest, which represents an
approximately 40% increase in his weight since his arrest. The video provides the jury with an opportunity to see
the defendant as he appeared close to the time of the bank robberies. All of the government witnesses have
described the robber as very thin, slim, or a small guy.").

On September 16, 2009, Judge Henry Kennedy, Jr. sentenced Mr. Stubblefield to 180 months imprisonment. J. & Commitment 1–2, Sept. 24, 2009, ECF No. 90. This sentence fell within the Guidelines range based on a total offense level of 30 and criminal history category of VI. *See* PSR ¶ 154. Mr. Stubblefield appealed on various grounds, including Speedy Trial violations and errors that he claimed the district court made in limiting defense counsel's closing argument and in admitting evidence of an uncharged bank robbery. *Stubblefield*, 643 F.3d at 292. Appellant did not raise any matters related to his now-advanced Fourth Amendment claim, nor did he allege ineffective assistance of his trial counsel, even though his appeal was presented by the fourth attorney appointed by the court.[5] The Court of Appeals affirmed Mr. Stubblefield's conviction, rejecting his first two arguments and finding that any error as to the evidentiary matter was harmless in light of the government's proof that the error "did not have a 'substantial and injurious effect or influence' on the jury's verdict." *Id.* at 292, 297 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Defendant now asks this Court to order an evidentiary hearing to determine if he received ineffective assistance from Ms. Shaner. Def.'s 2255 Mem. 18. Defendant submits that Ms. Shaner (1) "failed to file motion to quash indictment on the basis of lack of probable cause to stop, seize, and search the defendant;" (2) "failed to file motion to suppress the government's use of a booking photograph as the 'fruit' of an illegal arrest;" and (3) "failed to raise in the district court that defendant's arrest on the minor offense was a pretext to search for evidence of bank

---

[5] Mr. Jeffress withdrew as counsel prior to trial at the request of the defendant. *See* Mot. Withdraw, ECF No. 16. After trial but prior to sentencing, Ms. Shaner withdrew as counsel at the request of the defendant. *See* Mot. Withdraw, ECF No. 68; *see also* Def.'s Mot. Withdraw, ECF No. 67 (defendant's request that the Court remove Ms. Shaner as counsel). On June 6, 2009, Joanne Roney Hepworth appeared for the defendant. *See* Notice of Appearance, ECF No. 81. Less than two months later, the defendant requested that the Court remove Ms. Hepworth. *See* Def.'s Mot. Withdraw, ECF No. 83. The Court then appointed Dennis Michael Hart for the defendant to assist with defendant's appeal. *See* Minute Entry for Case No. 1:08-cr-00171-RCL, Oct. 13, 2009.

robber[y] that he was suspected of committing." Mot. Vacate 5, ECF No. 109. The government believes the Court may dismiss the instant motion without a hearing, finding defendant's first claim to be "legally insupportable" and arguing the latter two claims fail because law enforcement had probable cause to arrest defendant for the April 7 bank robbery after they stopped him on May 12, or, alternatively, that his photograph was not suppressible. *See* Gov't Opp'n 19–30.

## II.    DISCUSSION

Section 2255 allows Mr. Stubblefield to move this Court to vacate his conviction "upon the ground that the sentence was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof under § 2255 and must demonstrate his right to relief by a preponderance of the evidence. *United States v. Pollard*, 602 F. Supp. 2d 165, 168 (D.D.C. 2009). As the basis of his motion, Mr. Stubblefield claims his Sixth Amendment right to counsel was violated. While, in general, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," "an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To succeed on his ineffective assistance of counsel claim, the defendant must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also United States v. Weathers*, 493 F.3d 229, 234 (D.C. Cir. 2007) (stating that the *Strickland* test controls in evaluation of ineffective assistance of counsel claims). "Failure to

10

make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

A showing of deficient performance requires proof "that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quotations and internal modifications omitted). "As a general matter, the bar of objective reasonableness is set rather low." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008). "Counsel . . . has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688 (citing *Powell v. Alabama*, 287 U.S. 45, 68–69 (1932)). This Court's review of counsel's performance "must be highly deferential," and "the court should keep in mind that counsel's function . . . is to make the adversarial testing process work in the particular case . . . [and] recognize that counsel is strongly presumed to have rendered adequate assistance." *Id.* at 689–90. In sum, the burden on the defendant is "obvious[ly] . . . highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Deficient performance alone does not constitute ineffective assistance of counsel; the deficiencies "must be prejudicial to the defense." *Strickland*, 466 U.S. at 692. Prejudice requires that there be "a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the alleged deficiency is counsel's failure to raise a Fourth Amendment violation, the defendant "must show that the Fourth Amendment claim has merit and that there was a

reasonable possibility that the verdict would have been different absent the excludable evidence." *United States v. Wood*, 879 F.2d 927, 934 (D.C. Cir. 1989) (citing *Kimmelman*, 477 U.S. at 375). A defendant cannot be prejudiced by failure of his counsel "to challenge a *legal* search and seizure." *Id.* (emphasis in original); *see United States v. Flynn*, 204 Fed. App'x 23, 24 (D.C. Cir. 2006) (finding that defendant's ineffective assistance of counsel claim failed because his counsel's failure to raise his Fourth Amendment claim, which the court found to be a lawful seizure, caused no prejudice). Finding merit in a petitioner's Fourth Amendment claim does not constitute *per se* ineffective assistance of counsel, *Kimmelman*, 477 U.S. at 384, and an ineffective assistance of counsel claim will not prevail unless petitioner "proves under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys." *Id.* at 382.

Here, defendant asserts three separate but overlapping grounds that all boil down to a multi-faceted Fourth Amendment claim—that he was unlawfully stopped and searched by law enforcement on May 12, 2008. Defendant believes that, but for this unlawful search and seizure, "the outcome of the trial would have been different" because his booking photograph and the eyewitness photo-array identifications that it lead to would have been suppressed. Reply 8. The government maintains that law enforcement had probable cause to arrest defendant, and, therefore, any suppression motion would have failed. *See* Opp'n 23–27. Alternatively, the government argues that even if the defendant does make a prima facia showing of an illegal search and seizure, his booking photograph is not suppressible. *Id.* 22–23.

### A.     A Motion To Quash the Indictment Would Have Been Meritless.

Defendant argues his counsel rendered ineffective assistance when she failed to file a motion to quash the indictment on the basis of an illegal search. *See* Def.'s 2255 Mem. 13. Defendant articulates a convincing basis for his Fourth Amendment claim; however, he ignores

well settled law that states that while illegally seized evidence may be suppressed at trial, it does not bar the prosecution all together. *See United States v. Blue*, 384 U.S. 251, 255 (1966) ("So drastic a step . . . would also increase to an intolerable degree interference with the public interest in having the guilty brought to book."); *see also United States v. Morrison*, 449 U.S. 361, 366 (1981) ("[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."); *United States v. Calandra*, 414 U.S. 338, 351 (1974) (refusing to extend the exclusionary rule to grand jury proceedings because "[t]he incentive to disregard the requirement of the Fourth Amendment solely to obtain an indictment from a grand jury is substantially negated by the inadmissibility of the illegally seized evidence in a subsequent criminal prosecution of the search victim").

Regardless of whether defendant's Fourth Amendment claim has merit, defendant makes no showing that a motion to quash would have been successful. The defendant avers that *Minnesota v. Dickerson*, 508 U.S. 366 (1993), should instruct the Court's analysis. Reply 4–5. *Dickerson*, however, involved a suppression motion—not a motion to quash an indictment. *See id.* at 369. At bottom, the Court finds defendant's first ground insupportable and believes that the aggregate of his three separate grounds can be addressed under the same argument: that counsel failed to file a motion to suppress the fruit of defendant's alleged unlawful search and seizure.

**B.      Failure to File a Motion to Suppress Was Not Prejudicial Because Defendant's Fourth Amendment Claim Fails.**

The dispositive issue here is whether a motion to suppress defendant's booking photograph would have succeeded, and if so, whether "there was a reasonable possibility that the

verdict would have been different absent the excludable evidence." *Wood*, 879 F.2d at 934. The Court construes the defendant's claim to be that law enforcement lacked reasonable suspicion to stop him, but even if the stop was lawful, police exceeded the limits of the investigatory stop when they searched him and found the crack stem that was used to justify his arrest. *See* Def.'s 2255 Mem. 10–13. Defendant alleges that "the crack cocaine stem was not detected in [his] pocket during that search ostensibly for weapons." *Id.* at 11. In its opposition, the government claims that, because law enforcement possessed probable cause to arrest the defendant for bank robbery, defendant's "search and apprehension was proper." Opp'n 23.[6] Thus, the threshold issue is whether defendant's arrest on May 12 was lawful.

The government correctly states that if probable cause to arrest the defendant for bank robbery existed at the time of the stop, notwithstanding the failure to communicate that to the defendant, the seizure of drug paraphernalia would have been the result of a lawful search incident to arrest, and defendant's Fourth Amendment claim would fail. *See United States v. Brookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002) ("[I]f a police officer arrests a defendant on a ground that ultimately proves invalid, the arrest is nonetheless lawful if the same officer had probable cause to arrest the defendant for a different criminal offense."). Because the Court finds that law enforcement, after stopping the defendant on May 12, possessed probable cause to arrest the defendant for the April 7 bank robbery, defendant's Fourth Amendment claim fails.

---

[6] The government, additionally, argued that if the search was found to be unlawful, a motion to suppress would have failed because the defendant's "facial image is not suppressible" and "the police would have [inevitably] discovered defendant's identity." Opp'n 22–23, 28. Because the Court agrees with the government that probable cause existed to arrest the defendant for bank robbery prior to the search that uncovered drug paraphernalia, the defendant's additional arguments as to whether the fruits of that search are otherwise suppressible are moot and not addressed.

1.    **MPD officers possessed reasonable suspicion to conduct an investigatory stop of defendant.**

Police do not need probable cause to stop a suspect thought to be involved in a completed crime. *United States v. Hensley*, 469 U.S. 221, 229 (1985) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion."). Indeed, investigatory stops require "considerably less than probable cause." *United States v. Davis*, 235 F.3d 584, 586 (D.C. Cir. 2000).

The Court begins its analysis with the question of whether there was reasonable suspicion to conduct an investigatory stop of the defendant. The defendant relies on *Florida v. J.L.*, 529 U.S. 266 (2000), to argue that police lacked reasonable suspicion to stop him. *See* Reply 5, 7. In *J.L.*, police received an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268. Apart from the anonymous report, the police had no information or reason to believe that the reported individuals were engaged in illegal activity. *Id.* The police officers stopped and frisked the individual matching the description and seized a gun from his pocket. *Id.* The Supreme Court held that an anonymous tip—"from an unknown location by an unknown caller"—that an individual is carrying a gun, without more, is not a sufficient basis to stop and frisk that person. *Id.* at 268, 270.

*J.L.* is wholly distinguishable to the facts at bar. In *J.L.*, the police would not have known about the ongoing criminal activity but for the anonymous tip. Here, law enforcement knew a crime—the April 7 bank robbery—had been committed, the investigation of which was ongoing at the time of the tip that led to the suspect's apprehension. Furthermore, the tip here was not anonymous. Prior to calling in the tip on May 12, the same citizen stated, in-person, to

the same FBI Agent, that he knew the subject of the sketch and that the subject frequented the area around 7th Street and Florida Avenue, N.W.—the area where evidence showed the perpetrator was dropped off following the robbery. *See* 12/09/08 Tr. 8 (testimony of Special Agent DeJesus). On the date of defendant's arrest, the informant notified the FBI that the subject of the sketch was located at 7th Street and Rhode Island Avenue, N.W., three blocks from the area law enforcement already had reason to believe the suspect would be found.

More importantly, prior to the tip, witnesses to the April 7 bank robbery provided law enforcement with a unique description of the bank robber, including gender, race, approximate height, approximate age, and an unusual facial complexion. Thus, because law enforcement received a tip from an individual known to them from a previous face-to-face encounter and which was in response to—and corroborated with—an ongoing criminal investigation seeking a particularly described individual, the police had reasonable suspicion that the identified individual was connected to past criminal activity. *See United States v. Davis*, 235 F.3d 584, 587–88 (D.C. Cir. 2000) (finding that police officers, armed with descriptions of a criminal suspect relayed from police channels and by a 911-caller, had reasonable suspicion to stop an individual matching the described suspect's clothing, location, and race); *cf. United States v. Thompson*, 234 F.3d 725, 729 (D.C. Cir. 2000) (finding that a face-to-face tip, made after the tipster "just saw" a man carrying a gun, bore greater indicia of reliability compared to the anonymous tip in *J.L.*).

> **2.      Reasonable suspicion ripened into probable cause upon apprehension of the defendant.**

Circumstances arising during the course of a lawful stop may cause reasonable suspicion to ripen into probable cause. *Rice v. District of Columbia*, 774 F. Supp. 2d 18, 23 (D.D.C. 2011).

"Whether the police have probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of a prudent police officer and in light of the police officer's training and experience." *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983)). "Probable cause to arrest exists where 'the facts and circumstances' within a law enforcement officer's knowledge are 'sufficient to warrant a prudent [person] in believing that [the suspects] had committed or [were] committing an offense.'" *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "'common sense' determination, which turns on the 'practical considerations of everyday life.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "While each fact standing alone may be insufficient, the combination of all of the facts can establish probable cause, and certain conduct that may appear 'innocent to a lay person may have entirely different significance to an experienced [law enforcement] officer.'" *Id.* (quoting *Catlett*, 97 F.3d at 573–74) (internal citations omitted). In evaluating probable cause, the Court may give "due weight to inferences drawn from the evidence by law enforcement officers." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

The issue of whether probable cause existed to arrest the defendant was reviewed by Judge Kay during Mr. Stubblefield's preliminary post-arrest detention hearing on May 16, 2008. There, Judge Kay found the following circumstances were sufficient to establish probable cause for the defendant's arrest for bank robbery: (1) defendant's apprehension in the immediate vicinity of the known location where the bank robber was dropped off following the April 7 bank robbery; (2) defendant's race, gender, age, height, and facial complexion all matched witness descriptions of the perpetrator; (3) defendant's act of distorting his facial appearance during police attempts to photograph him; and (4) photo-array identification of the defendant as the

perpetrator by one of the bank robbery witnesses. The issue before the Court is whether the totality of the facts and circumstances known to law enforcement leading up to and during the May 12 apprehension—prior to the discovery of drug paraphernalia, which established independent probable cause supporting an arrest for PDP—were sufficient to warrant a prudent police officer to believe that Mr. Stubblefield committed the April 7 bank robbery and thus provide probable cause for his arrest and a lawful search incident to arrest. *See Gilliam*, 167 F.3d at 633. The Court finds they were.

In *Smith v. United States*, the D.C. Circuit held that the correct test for evaluating probable cause is "whether a warrant if sought could have been obtained by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed." 358 F.2d 833, 837 (D.C. Cir. 1966). After receiving information that a subject sought in connection with recent bank robberies was spotted in a specific location, MPD officers responded to the location reported by the informant. 12/09/08 Tr. 12. Although the responding MPD officers that arrested the defendant were not members of the joint FBI/MPD task force investigating the crimes, the evaluation of probable cause to arrest the defendant encompasses the collective knowledge of the task force investigation team with the observations of the responding MPD officers. *See United States v. Hawkins*, 595 F.2d 751, 752–53 n.2 (D.C. Cir. 1978) ("[P]robable cause may emanate from the collective knowledge of the police, though the officer who performs the act of arresting or searching may be far less informed.").

In addition to the particularized knowledge regarding the robbery suspect and the corroborated information provided by the informant, the Court may consider the defendant's actions in response to the approaching police officers. *See In re Sealed Case 96-3167*, 153 F.3d

759, 765 (D.C. Cir. 1998) (finding that defendant's flight, in addition to other incriminating circumstances, weighed in favor of establishing probable cause); *see also United States v. Dotson*, 49 F.3d 227, 231 (6th Cir. 1995) (finding that the defendant's attempt to flee from a self-identified police officer was a circumstance sufficient to convert ex ante reasonable suspicion into ex post facto probable cause) (citing, *inter alia, United States v. Sharpe*, 470 U.S. 675, 706 (1985) (Brennan, J. dissenting) (stating that flight in response to the presence of authorities can give rise to probable cause when coupled with pre-existing reasonable suspicion)); *Rice*, 774 F. Supp. 2d at 23–24 (finding that when defendant disobeyed a police officer's command to "freeze" during a lawful stop, the defendant committed the crime of resisting and opposing a police officer, which provided probable cause for his arrest); *United States v. McFadden*, 722 F. Supp. 807, 809–10 (D.D.C. 1989) ("[I]f there already exists a significant degree of suspicion concerning a particular person, the flight of that individual upon the approach of the police may be taken into account and may well elevate the pre-existing suspicion up to the requisite Fourth Amendment level of probable cause.").

Here, police found the defendant, who was recognized by the FBI informant as the subject of the witness-corroborated sketch of the perpetrator, in the immediate vicinity of the last known location of the bank robber. Defendant fled when he was approached by MPD officers.[7] He provided a name that did not match the name the informant overheard. After police detained the defendant, following his flight, they were able to corroborate the unique descriptors of the suspect—gender, age, height, race, and, most importantly in the Court's eyes, his unique facial

---

[7] The evidence of flight in the record comes from the affidavit of Special Agent DeJesus. Defendant alleges that he did not flee but rather coincidentally walked down an alley "to relieve himself" as the police followed him. Reply 7. The Court finds defendant's clarification suspicious, particularly since it was presented not in his Motion and supporting memorandum but only after argument by the government that flight can be considered as a factor weighing in favor of finding probable cause. The Court believes the evidence warrants a finding that the defendant fled. *See Gilliam* 167 F.3d at 633.

complexion.  The Court believes that, *at that time*, given the totality of the circumstances, probable cause existed to arrest the defendant for the April 7 bank robbery.  *See United States v. Carpenter*, 342 F.3d 812, 814–15 (7th Cir. 2003) (finding probable cause to arrest defendant due to his match with the suspected bank robber's age, race, height, and the same "unusual" pants worn during the robbery, along with his presence with two other men who fit a general description of additional robbers, and furtive actions observed by police).

Having probable cause to arrest Mr. Stubblefield for the April 7 bank robbery, the subsequent search that produced drug paraphernalia was not unlawful, and thus, the failure to file a motion to suppress caused no prejudice.  *Wood*, 879 F.2d at 933.  Additionally, defendant's claim that his arrest for PDP was pretextual also fails for the same reasons.  *Brookhardt*, 277 F.3d 558, 564.

### C.     An Evidentiary Hearing Is Not Required

"A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255).  The Court finds the record in this case conclusively shows that the defendant is not entitled to relief, and thus, will dismiss the motion without a hearing.

### III.    CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before pursuing any appeal from a final order in a § 2255 proceeding.  *See* 28 U.S.C. § 2253(c)(1)(B).  When the denial of a § 2255 motion is based on the merits of the claims in the motion, a district court should issue a certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In *Slack v. McDaniel*, the

Supreme Court stated that when a district court rejects the constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. 473, 483 (2000).

Because the defendant has not made a substantial showing of the denial of a constitutional right, and because the Court finds that reasonable jurists would not find the Court's assessments of his constitutional claims debatable or wrong, the Court declines to issue a certificate of appealability.

## IV.    CONCLUSION

Because the defendant was lawfully arrested on May 12, 2008, the Court concludes that Ms. Shaner's failure to file a motion to quash the indictment or a motion to suppress evidence resulted in no prejudice to defendant's case.   Thus, defendant's Motion must be denied.   A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March/ 19,2013.

21